IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

GENEVA RUSSELL,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No.: 3:12-CV-325

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; AND (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled within the meaning of the Social Security Act and therefore unentitled to Supplemental Security Income ("SSI").[2]  This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 9), Plaintiff's Reply (doc. 10), the administrative record (doc. 6), and the record as a whole.[3]

**I.**

Plaintiff applied for SSI in February 2008, alleging a disability onset date of February 15, 2008.  PageID 113.  Plaintiff claims she is disabled due to multiple impairments including, *inter*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Plaintiff seeks an award of SSI only.  Plaintiff initially applied for both Disability Insurance Benefits ("DIB") and SSI.  When appearing before the ALJ, Plaintiff, through counsel, amended her alleged onset date, thus foregoing her DIB claim and proceeding only under SSI.  PageID 113.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.  Additionally, Plaintiff's pertinent medical records have been adequately summarized in the administrative decision and her Statement of Errors, *see* doc. 8 at PageID 835-38; PageID 81-85, and the Court will not repeat them here.  Where applicable, the Court will identify the medical evidence relevant to its decision.

*alia*, bipolar disorder.  PageID 229-46, 280.  Following initial denials of her application, administrative hearings were conducted before ALJ Thomas McNichols on September 13, 2010 and March 9, 2011.  PageID 100-08, 110-45.  The ALJ issued a written decision on April 4, 2011, finding Plaintiff not disabled.  PageID 78-91.  Specifically, the ALJ's findings were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001;

2. The claimant has not engaged in substantial gainful activity since . . . the original alleged disability onset date;

3. The claimant has the following severe impairments: 1) bipolar disorder; 2) borderline intellectual function (BIF); and 3) a history of polysubstance abuse and dependence;

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")][4] to perform medium work as defined in [20 C.F.R. § 416.967(c)] except: 1) no climbing of ropes, ladders, or scaffolds; 2) no exposure to hazards; 3) no exposure to the general public; 4) no complex or detailed instructions; 5) work that is "low stress," defined as no production quotas and no over-the-shoulder supervision; 6) work that is simple with one- or two-step tasks requiring little, if any concentration; and 7) limited contact with co-workers and supervisors;[5]

6. The claimant cannot perform her past relevant work;

7. The claimant was born on . . . and was 20 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date;

---

[4] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain.  20 C.F.R. § 416.945(a).  The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. §§ 416.945(b), (c), and (d).

[5] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 416.967.  Medium work involves lifting no more than 50 pounds at a time, with frequent lifting of objects weighing 25 pounds. *Id.* § 416.967(c).

> 8. The claimant has a "limited" education and is able to communicate in English;
>
> 9. Transferability of job skills is not an issue because the claimant is not found to be disabled, whether she has any transferable skills or not;
>
> 10. Considering her age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform; [and]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from . . . February 15, 2008, through the date of this decision.

PageID 80-91 (internal citations omitted, brackets and footnotes added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 55-59; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This timely appeal followed.  *See Cook v. Comm'r of Soc. Sec.,* 480 F.3d 432, 435 (6th Cir. 2007).

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found the claimant

disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the Commissioner has a "'zone of choice' within which the Commissioner can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's RFC, can he or she perform his or her past relevant work?

    5.    Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. § 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997). During the first four steps of the five-step sequential analysis, the claimant has the burden of proof. 20 C.F.R. § 416.920. Should the claimant meet all requirements of the previous steps, at Step 5 the burden shifts to the Commissioner to establish that the claimant retains the RFC to perform other substantial gainful activity existing in the national economy. *Key*, 109 F.3d at 274.

## III.

On appeal, Plaintiff argues the ALJ improperly analyzed (and gave too little weight to) the medical findings of her treating psychiatrist, Shirlann Knight, M.D., while affording too much weight to the medical findings by the two State consulting doctors, Drs. Karen Stailey-Steiger, Ph.D. and Aracelis Rivera, Psy.D., who reviewed her medical records, but neither examined nor treated her.[6]

### A. The ALJ Improperly Weighed the Treater's Opinion

Social Security regulations require an ALJ to give the opinion of a claimant's treating physician (including a treating psychiatrist) controlling weight if it is "well-supported by

---

[6] To that end, Plaintiff makes the corollary argument that the ALJ improperly evaluated the psychological evidence of record. Doc. 8 at PageID 831. This contention is subsumed into Plaintiff's primary argument -- that the ALJ improperly reviewed the medical evidence by her treating psychiatrist. Although the merits of this argument thus need not be addressed, the Court finds, for the reasons discussed in more detail *infra*, that the ALJ's analysis of Plaintiff's mental impairments is not supported by substantial evidence.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); *accord Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 417 (6th Cir. 2012) (finding the ALJ erred in failing to give controlling weight to the opinion of claimant's treating psychiatrist under the treating physician rule). "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion . . . is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted). In evaluating the weight to give a medical opinion, the ALJ must apply certain factors, including the length of the treatment relationship, frequency of examination, the treater's specialization, supportability of the opinion, and consistency of the opinion with the record as a whole. 20 C.F.R. §§ 416.927(c)(1)-(6); *Bowen*, 478 F.3d at 747.

The ALJ is required to provide "good reasons" for discounting the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

In making his RFC finding, the ALJ acknowledged the disability opinion of Plaintiff's treating psychiatrist, Dr. Knight; however, he declined to give her opinion controlling or even deferential weight. PageID 82. The ALJ stated: "The undersigned, having reviewed the record in its entirety, finds that this opinion is entitled to little weight." *Id.* Instead, the ALJ accepted

the opinion of the State record-reviewing psychologists in making his RFC determination. PageID 81. As explained below, this analysis is unsupported by substantial evidence and violates the treating physician rule.

Plaintiff began treatment at Day-Mont Behavioral Health Center in February 2008. PageID 373. Dr. Knight diagnosed her with bipolar disorder, post-traumatic stress disorder ("PTSD"), polysubstance dependence, and antisocial traits. PageID 386-87. Plaintiff was assessed a GAF score of 45 and classified as having serious impairments in her social functioning.[7] PageID 554-55. Dr. Knight prescribed antidepressant drugs, which she reported had some positive effect on Plaintiff, but did not resolve her mood issues. PageID 568. Plaintiff experienced difficulty maintaining her appointments with Dr. Knight, and fluctuated in progress. PageID 542-43, 556.

Dr. Knight completed a mental status questionnaire on November 3, 2008. PageID 567-69. In it, she reported that Plaintiff suffers from irritability, anxiety, and hallucinations. PageID 567. She opined that Plaintiff's ability to maintain attention was limited, and that she had difficulty sustaining concentration, persisting at tasks, and completing tasks in a timely fashion. PageID 568. Dr. Knight noted Plaintiff's anxiety and trust issues, and cited these factors as affecting Plaintiff's ability to perform work. *Id*.

On October 29, 2010, Dr. Knight completed an RFC assessment and again assessed Plaintiff as incapable of maintaining employment. PageID 730. Dr. Knight found Plaintiff markedly limited in her ability to: understand, remember, and carry out detailed instructions;

---

[7] "GAF," or Global Assessment of Functioning, is a tool used by health care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. *Diagnostic and Statistical Manual of Mental Disorders* 34 (5th ed. 2013) ("DSM-V"). It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F. App'x 191, 194 n.2 (6th Cir. 2003). A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.*

maintain attention and concentration for extended periods; work in coordination or proximity to others without being distracted by them; complete a normal workday without interruptions from psychologically-based symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticism; and get along with co-workers without exhibiting behavioral extremes. *Id.*

The ALJ's stated reasons for disregarding Dr. Knight's findings are not "good reasons." To that end, the ALJ erred in many respects in his analysis of Dr. Knight's medical opinion.

First, the ALJ noted that Plaintiff missed multiple appointments with Dr. Knight. PageID 82. However, "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evinces a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283 (6th Cir. 2009) (citation omitted); *see also Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). This is particularly so in the present case where the record indicates that Plaintiff had trouble sleeping; she suffered from anxiety attacks; she experienced social withdrawal and mistrust of others; and she struggled with memory loss. PageID 122-23, 463. Moreover, Plaintiff's inability to maintain attendance in treatment supports Dr. Knight's opinion that she could not "perform activities within a schedule and sustain an ordinary routine," rather than serving as a reason for discrediting Dr. Knight. PageID 730; *accord Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) (noting that "a claimant's failure to seek formal mental health treatment is hardly probative of whether the claimant suffers from a mental impairment").

Second, the ALJ stated that Dr. Knight's opinion was not entitled to deference because "[t]here were significant periods when the claimant was not taking any medications due to either non-compliance or pregnancy . . . [and Plaintiff] never took medication until February 2008." PageID 82. However, this is not a valid reason to discredit Dr. Knight. "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result' of [the] impairment [itself] and, therefore, neither willful nor without justifiable excuse." *Burge v. Comm'r of Soc. Sec.*, No. 1:13-CV-87, 2013 WL 6837192, at *3 (N.D. Ohio Dec. 26, 2013) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). Moreover, the ALJ's assertion that "[i]f the claimant is medication compliant and avoids drugs and alcohol, the [RFC] adequately addresses the claimant's level of social functioning concerns," is not supported by the overall evidence of record. PageID 81. The ALJ himself acknowledges that "the record does not reflect a demonstrable period of time when the claimant was medication-compliant" from which the ALJ could draw such a conclusion. PageID 87; *see Mitsoff v. Comm'r of Soc. Sec.*, 940 F.Supp. 2d 693, 703 (S.D. Ohio 2013) (Rice, J.; Newman, M.J.) (holding that an ALJ is not qualified to interpret raw medical data).

Third, the ALJ cited Plaintiff's motivation for being in treatment with Dr. Knight as a reason to discredit Dr. Knight's opinion. He stated: "The claimant had served time in jail, and the only reason the claimant attended Day-Mont West was because she was under court order to do so." PageID 82. This conclusion, whether or not it is correct, finds no support in the record. Moreover, this interpretation of Plaintiff's treatment relationship with Dr. Knight does not function as a "good reason": it does not speak to Dr. Knight's specialty; the consistency of Dr. Knight's opinion with the other opinions of record; or her examining relationship with Plaintiff. 20 C.F.R. § 416.927(c)(2). Nor does it provide any insight into the opinion's supportability or

acknowledge Dr. Knight's extensive treatment history with Plaintiff, spanning over two years. PageID 730.

Fourth, the ALJ failed to acknowledge that Dr. Knight's opinion is supported by the opinion of examining psychologist, Mary Ann Jones, Ph.D. Dr. Jones opined in May 2008 that it was "unlikely that [Plaintiff] would be able to relate sufficiently to co-workers and supervisors, on any sustained basis (for two or more hours at a time) even to perform simple repetitive tasks." PageID 465. Dr. Jones found that Plaintiff could not perform jobs requiring sustained public interaction due to her social withdrawal and emotional volatility. PageID 466. This opinion supports Dr. Knight's assessment of Plaintiff's limitations, and the ALJ failed to address this consistency.

Fifth, the ALJ mistakenly noted in his decision that "no doctor or psychologist has declared [Plaintiff] to be disabled." PageID 89. The ALJ failed to consider that Plaintiff's own treating psychiatrist found her unsuitable for employment. PageID 81.

Finally, the ALJ adopted Dr. Jones' opinion, except for the portion that did not support his non-disability finding. PageID 81. He stated: "I find the opinion of Dr. Jones is entitled to great weight except for her comment that the claimant would be unable to relate sufficiently to coworkers and supervisors on a sustained basis." *Id.* An ALJ may not focus "only on the evidence that supports moderate functional restrictions, when such a focus is not consistent with the record." *Phipps v. Comm'r of Soc. Sec.*, No. 3:11-CV-51, 2011 WL 6076334, at *6 (S.D. Ohio Dec. 6, 2011) (Black, J.) (finding an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position").

In sum, the ALJ erred by improperly discounting the opinion of Plaintiff's treating psychiatrist. Under Social Security regulations, Dr. Knight's disability opinion is presumptively

-10-

"accorded the most deference" because of the "ongoing relationship between the patient and the opining physician." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

### B. The ALJ Erred in Weighing the State Consulting Doctors' Opinions

The ALJ also improperly weighed the opinions of the two State consulting doctors in making his RFC determination.[8] Social Security regulations require the ALJ to apply the same § 416.927(c) factors, applicable to a treater, when assessing the amount of weight to give the opinions of non-examining doctors. *Gayheart*, 710 F.3d at 379. In doing so, the ALJ must apply the same level of scrutiny as afforded to treating source opinions. *Id.* In this case, the ALJ offered no analysis regarding the "good reasons" factors in his discussion of the two State consulting psychologists.

The only medical opinion to which the ALJ deferred was that of Dr. Stailey-Steiger, who functioned as a non-examining source. As such, Dr. Stailey-Steiger reviewed Plaintiff's records and gave an assessment. In June 2008, she opined that Plaintiff would have some mild restriction in activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace. PageID 513. She concluded that Plaintiff could perform simple, repetitive tasks, and could interact on a superficial level with co-workers and supervisors, but could not interact with the general public. *Id.* In October 2008, Aracelis Rivera, Psy.D. offered a one-sentence affirmance of Dr. Stailey-Steiger's opinion. PageID 566.

Regarding Dr. Stailey-Steiger's opinion, the ALJ recounted the opinion itself, but failed to analyze the opinion under the necessary medical opinion factors. 20 C.F.R.

---

[8] There are three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). As a general matter, an opinion from a treating source is given the most weight (and possibly controlling weight if certain criteria are satisfied), and an opinion from an examining source is given more weight than that from a non-examining source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The State consulting doctors in this case served as non-examining sources.

§§ 416.927(c)(1)-(6). The ALJ only stated: "I find this to be an accurate assessment of the claimant's mental functional capability and give this opinion considerable weight." PageID 81. He provided no discussion of the opinion's consistency with the record as a whole, the two State psychologists' specialties and their relationship to Plaintiff, or any other applicable factor. Moreover, the ALJ did not address the fact that the record-reviewing psychologists, upon whom the ALJ based his RFC, did not review the longitudinal record. *Blakley*, 581 F.3d at 406. Their review of the record was conducted in June and October 2008. These assessments took place before Plaintiff received a significant portion of her mental health treatment with Dr. Knight, and that treatment was thus not accounted for in their opinions. The ALJ did not address this fact in his decision, and instead erroneously injected his own lay medical opinion regarding the supportability of their opinions. PageID 82. The ALJ may not criticize alleged inconsistencies between a treating opinion and other record evidence, while not acknowledging equivalent errors in the opinions of consulting doctors. *Gayheart*, 710 F.3d at 379. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation [20 C.F.R. § 416.927] requires." *Id.* (citations omitted).

### IV.

For the foregoing reasons, Plaintiff's arguments are well taken. The Court finds that, because the ALJ misapplied Social Security regulations in weighing the medical opinions of record, the ALJ's decision is unsupported by substantial evidence and merits reversal and remand. *See Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 175-76 (6th Cir. 1994). On remand, the Commissioner shall hold an additional administrative hearing and consider anew all of Plaintiff's various impairments, singularly and in combination, using a Medical Expert if necessary.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

January 30, 2014                                   **s/ Michael J. Newman**
                                                   United States Magistrate Judge

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

January 30, 2014                                   **s/ Michael J. Newman**
                                                   United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).